**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:**<br><br>**RIVERA PIMENTEL, MIGDALIA**<br><br>**SANTOS TORRES, EFRAIN**<br><br>**DEBTORS** | **CASE NO. 09-00990**<br><br>**CHAPTER 13** |
| **RIVERA PIMENTEL, MIGDALIA**<br>**SANTOS TORRES, EFRAIN**<br><br>**PLAINTIFFS**<br><br>**V.**<br><br>**BANCO BILBAO VIZCAYA ARGENTARIA, JOHN DOE, RICHARD ROE AND ABC INSURANCE COMPANY**<br><br>**Defendants** | **ADV. PROC. NO.** |

**MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE COURT:**

**COME NOW** debtors, represented by the undersigned attorney and respectfully represent and pray as follows:

1. On April 13, 2009, debtors, filed the above captioned complaint.

2. The plaintiffs request for summary judgment is predicated in that there are no genuine issues as to any material facts and that the plaintiffs are entitled to a judgment against BANCO BILBAO VIZCAYA ARGENTARIA, as a matter of law.

3. The plaintiffs now files this Motion for Summary Judgment and this brief in support thereof.

4. Pursuant to the Federal Rules of Civil Procedure, when there is no genuine controversy as to the material facts and in the event that the applicable statute entitles the moving party to a judgment in its favor, the Court may enter a summary Judgment.

**SUMMARY JUDGMENT STANDARD**

5. Rule 56(c) of the Federal Rules of Civil Procedure provides that the summary judgment shall be rendered forth with if the pleadings depositions, answered to interrogatories and admission on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages. Where there are no genuine nor material facts that might affect the outcome of the case that court shall grant a properly filed motion for summary judgment.

6. Substantive law defines which facts are material and only dispute over facts that might affect the outcome of the case will defeat summary. Anderson v. Liberty Lobby, Inc., (106 S.Ct 2505 (1986). In deciding whether a factual dispute is "genuine", the court must determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., supra at 2510. (Serrano- Cruz v. DFI Puerto Rico, Inc.,109 F. 3d 23, 25 (1st Cir. 1996); Sanchez v. Alvaro, 101 F 3d 223,227(1st Cir 1996). In weighing whether a factual dispute is "material", the court must examine the

substantive law of the case, because "only dispute over the facts that might affect the outcome of the suit under governing law will properly preclude the entry summary judgment". Anderson v. Liberty Lobby, Inc., Supra at 2510; (see also Vinick v. Commissioner of Internal Revenue, 110 F. 3d 168,171 (1st cir. 1997); In Re Sanchez, 101 F. 3d at 227; Roche, 81 F. 3d at 253. "Thus the Substantive law defines which facts are material" In Re Sanchez, supra, at 227 (citing Anderson, 106 S.Ct. at 2509-10).

**STATEMENT OF FACTS**

7. The plaintiffs are the owners of property described as 2005 Mitsubishi Lancer, herein after referred as the collateral. Purchase contract, exhibit 1.

8. The collateral was purchased in March 8, 2006 for $17,616.00. Purchase contract, exhibit 1.

9. The collateral was financed for a period of 60 at 12.70%. Purchase contract, exhibit 1.

10. The plaintiffs also purchased insurance coverage for the collateral. Said insurance is paid for and in place until March 8, 2011.

11. The collateral was recently valued as per Kelly Blue Book retail value at $8,740.00, as per the attached valuation. Exhibit 2.

12. The prime rate on the date of the filing of this complaint was 3.25%. See attached exhibit 3.

13. Upon judgment in this adversary proceeding, the debtors will amend the chapter 13 to provide for payment of defendant's claim in the amount of $4,275.00, exercising the "cramdown" option of 11 U.S.C. §1325 (a)(5)(B), providing for present value using the *prime plus*[1] formula approach, that is prime rate plus 2% which is (5.25%) of the total amount of the *value of the collateral* during the life of the plan, while the creditor will retain the lien until the secured portion of the claim is paid in full. The collateral will continue to be insured with the existing insurance policy until expiration of the original contract on March 8, 2011, and continued insurance will be provided by plaintiffs after that date until the value of the collateral plus the present value is completely paid.

## STATEMENT OF QUESTIONS PRESENTED

A. What is the value of the collateral?

B. What is the appropriate rate for present value interest?

## ARGUMENT

### A. Value of the collateral

14. The value of the secured claim is governed by § 506(a) of the Code. Section 506(a) governs the determination of whether any portion of a creditor's claim should be classified as a secured claim:

(a)

---

[1] See Till V. SCS Credit Corporation, 124 S. Ct. 1951

*In Re Rivera Pimentel, Migdalia*
*Case no. 09-00990*

(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

15. The Court in Assocs. Commercial Corp. v. Rash ,id., explained that a claim is divided into two parts, secured and unsecured.

> "[A] secured creditors's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral. . .. To separate the secured from the unsecured portion of a claim, a court must compare the creditor's claim to the value of 'such property,' i.e., the collateral."

16. Attached to this motion there is a valuation of debtors' vehicle, in which it is established that the retail value at which said vehicle would be sold at retail in its present condition is $4,275.00.

**B.**

**Present Value Interest**

17. Having determined the value of the collateral, we then must turn our attention into the appropriate interest rate to compensate defendant for present value, to comply with the provision of 11 U.S.C. §1325(a)(5)(B)(ii). We are fortunate, because the Supreme Court has ruled in this issued and has determined that the appropriate interest rate is what is known as the *prime plus*. In the case of Till V. SCS Credit Corporation, 124 S. Ct. 1951, the Court squarely addressed the question of the appropriate interest rate to be paid to the creditor, under "cram down" bankruptcy provision 11 U.S.C. § 1325(a)(5)(B)(ii). The Court explained, with bold supplied:

> The formula approach has none of these defects. Taking its cue from ordinary lending practices, the approach begins by looking to the **national prime rate, reported daily in the press**, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. The court must therefore hold a hearing at which the debtor and any creditors may

present evidence about the appropriate risk adjustment. Some of this evidence will be included in the debtor's bankruptcy filings, however, so the debtor and creditors may not incur significant additional expense. Moreover, starting from a concededly low estimate and adjusting upward places the evidentiary burden squarely on the creditors, who are likely to have readier access to any information absent from the debtor's filing (such as evidence about the "liquidity of the collateral market,"post, at ____, 158 L. Ed. 2d, at 813 (Scalia, J., dissenting)). Finally, many of the factors relevant to the adjustment fall squarely within the bankruptcy court's area of expertise.

Thus, unlike the coerced loan, presumptive contract rate, and cost of funds approaches, the formula approach entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings. Moreover, the resulting **"prime-plus"** rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances or its prior interactions with the debtor. For these reasons, the prime-plus or formula rate best comports with the purposes of the Bankruptcy Code.

...

Thus, a court choosing a cram down interest rate need not consider the creditor's individual circumstances, such as its pre bankruptcy dealings with the debtor or the alternative loans it could make if permitted to foreclose. Rather, the court should aim to treat similarly situated creditors similarly, and to ensure that an objective economic analysis would suggest the debtor's interest payments will adequately compensate all such creditors for the time value of their money and the risk of default.

18. In the Till, id., the Bankruptcy Court approved 1.5% and the Supreme Court noted that other courts have generally approved 1% to 3%. The Court said ... *it is sufficient to note that courts must choose a rate high enough to compensate a creditor for its risk* ***but not so high as to doom the bankruptcy plan***.

19. The collateral was financed at 12% also known as the contract rate. The prime rate at the time of the filing was 3.25. The plaintiffs submit that will be adequately protected and/or compensated by a present value of 5.25%, which is a reduction of the contract rate of only 7.45 points.

**PRAYER**

**WHEREFORE** plaintiffs prays from this Honorable Court to enter a judgement:

a. Determining that the correct present value rate to pay in this case is 5.25%,

b. Determining the value of the collateral is $4,275.00,

c. Declaring that BANCO BILBAO VIZCAYA ARGENTARIA's claim is secured only in the amount of $4,275.00,

d. Declaring that once the present value of the secured portion of the claim is paid in full BANCO BILBAO VIZCAYA ARGENTARIA shall surrender title of the collateral to the plaintiffs.

e. And to provide any further relief under law or equity that is proper.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification, upon information and belief, of such filing to all parties in interest, including but not limited to: Monsita Lecaroz Arribas, Esq., U.S. Trustee's Office, Ochoa Building, Suite 301, 500 Tanca Street, Old San Juan, P.R. 00906, and José R. Carrión, Esq.. We will serve by regular mail this document to any the above-named persons, upon knowing that they are non CM/ECF participants.

**RESPECTFULLY SUBMITTED.**

In Carolina, Puerto Rico, April 12, 2010

**LEGAL PARTNERS, P.S.C.**
Box 316, Señorial Station
San Juan, P.R. 00926-6023
Telephone: (787) 791-1818
Fax: (787) 791-4260

/s/Juan M. Suárez Cobo
**JUAN M. SUÁREZ COBO**
USDCPR 211010
suarezcobo@prtc.net
Attorney for:
Rivera Pimentel, Migdalia

Santos Torres, Efrain

Exhibit 1.

BBVA
1738 Calle Amarillo
Río Piedras, PR 00926

# CONTRATO DE VENTA AL POR MENOR A PLAZOS
## (ACUERDO DE GRAVAMEN MOBILIARIO)

EL VENDEDOR: Cruz Auto Corp. PO BOX 361 HUMACAO PR 00792
NOMBRE COMPLETO — Dirección Completa del Negocio — Zip Code

Vende y hace la siguiente divulgación requerida por Ley Federal y el(los)

COMPRADOR(ES): MIGDALIA RIVERA PIMENTEL
NOMBRE COMPLETO
URB LA MARINA K1 CALLE F CAROLINA PR 00979-
Dirección Residencial (donde se enviarán todas las Notificaciones) — Zip Code

NOMBRE COMPLETO
Dirección Residencial (donde se enviarán todas las Notificaciones) — Zip Code

Compra(n) y grava(n) la siguiente mercancía denominada "Vehículo" o "Propiedad"

9611549461

conforme a todos los términos y condiciones mencionados a continuación y al dorso de este Contrato. Para garantizar y asegurar el pago y cumplimiento total y a tiempo de todas las obligaciones contraídas por el COMPRADOR bajo este contrato y cualquier otro acuerdo futuro entre el COMPRADOR y el VENDEDOR, el COMPRADOR (incluye todos los compradores solidaria y mancomunadamente de ser más de uno) por valor recibido por este medio: (i) constituye a favor del VENDEDOR un gravamen mobiliario sobre el Vehículo descrito a continuación, el cual ha sido entregado al COMPRADOR a su entera satisfacción, (el "Vehículo") y sobre toda mejora, accesorios, accesiones, bienes o equipo incorporados o adheridos al Vehículo ("Mejoras"); y sobre cualquier otro bien o producto recibido por concepto de cualquier venta, cambio o disposición del Vehículo (incluyendo todo y cualquier pago bajo pólizas de seguro) ("Productos"); y sobre toda póliza de seguro y contrato de servicio para los cuales se incluya un cargo en este contrato ("Póliza de Seguro" y "Contrato de Servicio", según apliquen); y (ii) cede y traspasa a favor del VENDEDOR, hasta el monto del total insoluto bajo este contrato, toda cantidad que sea reembolsable por concepto de primas respecto a Pólizas de Seguros ("Reembolso de Primas de Seguro") así como por concepto de honorarios y otros pagos respecto a Contratos de Servicio ("Reembolso de Honorarios y Pagos") y a ese efecto además constituye sobre toda dicha cantidad un gravamen a favor del VENDEDOR. EL VENDEDOR retiene los gravámenes aquí constituidos así como todo derecho e interés que aquí le es cedido y traspasado sobre todo y cualquier Reembolso de Primas de Seguro y sobre Reembolso de Honorarios y Pagos, hasta que EL COMPRADOR haya pagado y satisfecho todas sus obligaciones bajo este contrato. El Vehículo gravado es el siguiente:

| Año | Nuevo o Usado | Marca y Modelo | Nº Cilindros | Núm. de Identificación del Vehículo | Uso Principal |
|---|---|---|---|---|---|
| 2006 | N | MITS LANCER DE | 4 | JA3AJ16E75U048136 | Personal [X] Negocio [ ] |

- [ ] Transmisión Manual Opcional
- [ ] Radio
- [ ] Frenos de Fuerza (Power Brakes)
- [ ] Ventanas Eléctricas
- [ ] Aire Acondicionado
- [ ] Transmisión Automática
- [ ] Guía Eléctrico Hidráulico (Power Steering)
- [ ] Asientos Control Eléctrico
- [ ] Stereo
- [ ] Otro - Describa
- [ ] 2 Puertas
- [X] 4 Puertas

## TERMINOS DEL CONTRATO

EL VENDEDOR tiene intención de ceder este contrato al BANCO BILBAO VIZCAYA ARGENTARIA PUERTO RICO ("BBVA"). Si este contrato es cedido al BBVA puede que sea considerado como un acreedor bajo este contrato para propósito del "Truth-In-Lending Act". En caso de que este contrato sea cedido el término "VENDEDOR" en lo sucesivo incluirá al Cesionario "BBVA" y cualquier cesionario de éste y así cedido, el Cesionario tendrá todos los derechos, poderes y prerrogativas del VENDEDOR bajo el mismo. Este contrato comprende el contrato entero entre las partes.

1. PAGOS: EL COMPRADOR se compromete a pagar al VENDEDOR o cesionario (el "Vendedor") todos los pagos establecidos en este contrato. Además:

A. Por cada plazo que esté en morosidad por un período mayor de quince (15) días, el COMPRADOR pagará cinco porciento (5%) del plazo así vencido. Disponiéndose que toda cantidad de plazos impagada a la fecha de vencimiento continuará acumulando intereses hasta su pago total. EL COMPRADOR pagará al VENDEDOR inmediatamente toda cantidad de intereses así acumulada.

B. En caso de que el Contrato sea referido a abogado para acción de reposesión de bienes muebles o para su cobro por vía judicial, el COMPRADOR pagará cincuenta dólares ($50.00) o el cinco porciento (5%) del balance de la deuda, lo que sea mayor, en concepto de honorarios de abogado. Si mediare una estipulación, el COMPRADOR pagará por dichos honorarios cincuenta dólares ($50.00) o el cinco porciento (5%) de las mensualidades vencidas y cobradas, lo que sea mayor.

C. Por cada cheque recibido en pago de cualquier cantidad y que sea devuelto el Comprador pagará un cargo de $10.00.

D. EL COMPRADOR pagará los derechos de constitución, cesión y cancelación del gravamen mobiliario objeto de este Contrato y derechos requeridos por las agencias gubernamentales correspondientes.

E. Las Costas y gastos incurridos de instarse una acción judicial en relación con este contrato, incluyendo, pero no limitado a, sellos de rentas internas, fianza judicial, costos de investigación y diligenciamiento, grúa, seguro, almacenamiento, posesión y conservación del Vehículo.

F. EL COMPRADOR podrá hacer abonos a principal y saldos por adelantado. No se cobrarán intereses sobre la porción del principal pagado por adelantado.

G. Todos los pagos requeridos por este contrato se harán o remitirán a la oficina principal del Departamento de Financiamiento de Automóviles de BBVA, localizada en la Calle Amarillo Núm. 1738, Río Piedras, Puerto Rico, 00926, o en cualquiera de sus sucursales localizadas en Puerto Rico.

2. EL COMPRADOR certifica que es mayor de edad y goza de la capacidad legal necesaria para otorgar de este contrato.

3. USO DE LA PROPIEDAD: EL COMPRADOR [illegible] el Vehículo libre de toda clase de reclamaciones y gravámenes y no cederá ni [illegible] su interés en este Contrato, o en el Vehículo, ni sus derechos asociados a Pólizas de Seguros o Contratos de Servicio para los cuales se [illegible] algún cargo en este contrato, [illegible] su derecho a Reembolsos de Primas o a Reembolso de Honorarios y Pagos, ni [illegible] la posesión del Vehículo, excepto con el [illegible] escrito del VENDEDOR o Cesionario. La venta, traspaso o cesión del interés [illegible] en el Vehículo en la propiedad gravada o el presente Contrato no liberará al COMPRADOR de sus obligaciones bajo el mismo. La venta, traspaso o cesión del interés del COMPRADOR en el Vehículo o el presente Contrato no liberará al COMPRADOR de sus obligaciones bajo el mismo, excepto si el COMPRADOR obtiene del VENDEDOR su consentimiento escrito a la sustitución del deudor. La [illegible] del Vehículo o de la propiedad aquí gravada sin el previo consentimiento escrito del VENDEDOR no transferirá derecho alguno a favor del tercero. El COMPRADOR se obliga a conservar el Vehículo en perfectas condiciones, con excepción del desgaste normal por uso y a cumplir con todas las leyes, reglamentos u órdenes de cuerpos gubernamentales aplicables. EL COMPRADOR pagará puntualmente todas las contribuciones, derechos de licencia, y cualquier otra obligación o penalidad impuesta por cualquier entidad gubernamental en relación con el Vehículo. EL COMPRADOR no usará el Vehículo ilegal ni impropiamente, no lo alquilará (a menos que así se consigne en este contrato) y no lo removerá de la jurisdicción del Estado Libre Asociado de Puerto Rico. EL VENDEDOR podrá a su opción, pagar cualquier cantidad a los fines de obtener la liberación del Vehículo de [illegible] y cualquier cantidad que fuere pagada a tales efectos por el VENDEDOR será [illegible] al VENDEDOR por el COMPRADOR inmediatamente que fuese requerido para ello con intereses al tipo contractual [illegible] más alto. No hay garantía implícita de comerciabilidad ("implied warranty of merchantability") ni garantía implícita de que el Vehículo sea propio para un propósito particular ("implied warranty of fitness for a particular purpose"), ni ninguna garantía expresa o implícita que se extienda más allá de la descripción del Vehículo en la faz de este contrato, excepto las requeridas por el Código Civil de Puerto Rico y el Reglamento de Garantías en la venta de vehículos de motor, promulgado por el Departamento de Asuntos del Consumidor del Estado Libre Asociado de Puerto Rico.

4. INCUMPLIMIENTO: El tiempo es un factor esencial en este contrato. EL VENDEDOR podrá acelerar el vencimiento de todo o parte del balance i[illegible] exigir el pago total de esa suma que será, al igual que todas las [illegible] bajo este [illegible] ni a ninguna [illegible] ni aviso, a todos los cuales se renuncia, en cualquiera de las siguientes circunstancias: (1) Cuando el COMPRADOR falte en el pago de tres [illegible] uno o más plazos [illegible] más plazos consecutivos y en [illegible] de los plazos vencidos; (3) [illegible] consecutivos, presente un [illegible] parcial continúe pagando los [illegible] remanente de la suma [illegible] que efectuó el

3120069

VEASE AL DORSO PARA EL RESTO DEL CONTRATO

### DETALLES DEL BALANCE DE PRINCIPAL Y CANTIDAD FINANCIADA

| | | | |
|---|---|---|---|
| 1 | PRECIO DE VENTA AL CONTADO<br>Precio de Venta Accesorios<br>Otros | | $ 15200.00<br>$ |
| 2 | PRONTO PAGO | Pronto Pago en efectivo $ 1500.00 (a)<br>Vehículo tomado a cuenta (Trade-In)<br>1991 CHEV CAVALIER<br>Descripción Marca-Año-Modelo<br>Valor bruto acordado del vehículo $ 1500.00<br>Menos la cantidad adeudada de $ 0.00<br>Valor Neto acordado del Vehículo tomado en cuenta $ 1500.00 (b)<br>Bono (Rebate) $ 0.00 (c)<br>PRONTO PAGO TOTAL (suma partidas a, b y c) | $ 3000.00 |
| 3 | BALANCE ADEUDADO DEL PRECIO DE CONTADO | | $ 12200.00 |
| 4 | CARGOS POR DERECHOS | CANTIDADES PAGADAS A OTROS POR CUENTA SUYA<br>Licencia, Seguro Obligatorio y ACAA. $ ____ (d)<br>Título / Traspaso $ 10.00 (e)<br>Declaración de Financiamiento, Cesión o Traspaso de Gravamen Mobiliario Terminación (Ley 2# del 17 de agosto de 1995) $ 10.00 (g)<br>Inscripción / Sellos $ 78.00 (f)<br>CARGOS POR DERECHOS (suma partidas d, e, f y g) Total | $ 98.00 |
| 5 | SEGUROS / CONTRATOS DE SERVICIOS (Véase divulgaciones adicional anejada) | | $ 5320.00 |
| 8 | BALANCE PRINCIPAL Y CANTIDAD FINANCIADA (suma de partidas 3, 4 y 5) | | $ 17610.00 |

DIVULGACION REQUERIDA POR LEY FEDERAL CONOCIDA COMO "TRUTH IN LENDING ACT" Y EL "REGLAMENTO Z"

[illegible]

PROGRAMA DE PAGOS

[illegible]

AVISO AL COMPRADOR: NO FIRME ESTE CONTRATO SIN LEERLO O SI EL MISMO CONTIENE ESPACIOS EN BLANCO. USTED TIENE DERECHO A UNA COPIA DE ESTE CONTRATO. BAJO LA LEY ACTUAL USTED TIENE DERECHO A SALDAR POR ANTICIPADO EL BALANCE ADEUDADO BAJO EL CONTRATO. EN ESTOS CASOS SE CANCELARA EL PRINCIPAL ADEUDADO A LA FECHA DE PAGO MAS CUALQUIER BALANCE PARA CUBRIR CARGOS O INTERESES ACUMULADOS A ESA FECHA.

CERTIFICO HABER RECIBIDO COPIA LLENA DE ESTE CONTRATO DE VENTA AL POR MENOR A PLAZOS Y QUE HE LEIDO AMBOS LADOS DE ESTE DOCUMENTO Y SUS ANEJOS.

AVISO AL DEUDOR, USTED ESTA ADVERTIDO QUE EL ACREEDOR GARANTIZADO/VENDEDOR TENDRA DERECHO A LA POSESION DE LA PROPIEDAD GRAVADA LUEGO DE UN EVENTO DE INCUMPLIMIENTO, SIN INCOAR PROCEDIMIENTO JUDICIAL.

CONTRATO DE VENTA AL POR MENOR A PLAZOS

Suscrito hoy 8 de Marzo de 2006
en HUMACAO, Puerto Rico.

X [signature]
Firma del Comprador(es)

X [signature]
Firma del Vendedor — CRUZ AUTO CORP. HUMACAO, PR

142AUTO-02(Rev.04-04)

ENGLISH TRANSLATION OF THIS CONTRACT IS AVAILABLE AT YOUR REQUEST.

PRIMER ORIGINAL

Exhibit 1.

TÉRMINOS DEL CONTRATO (continuación)

[illegible]

5. RIESGOS POR PERDIDA — SEGUROS. [illegible]

6. SEGURO DE VIDA Y CONTRATOS DE SERVICIO: Véase Divulgación Adicional sobre Seguros y Contratos de Servicio.

7. GENERAL: [illegible] llevará a cabo aquellos [illegible] y suscribirá aquellos documentos [illegible] necesarios o convenientes para proteger, mantener, perfeccionar y poner en vigor el gravamen mobiliario del VENDEDOR sobre el Vehículo y cualquier otro derecho del VENDEDOR bajo este Contrato. Una fotocopia del presente contrato o de la Declaración de Financiamiento será suficiente [illegible] utilizada como una declaración de financiamiento bajo la Ley de Transacciones Comerciales, según enmendada.

8. INTERPRETACIÓN: La validez y ejecutabilidad de este contrato se interpretará y regirá bajo las leyes del Estado Libre Asociado de Puerto Rico. El COMPRADOR se somete a la jurisdicción y competencia del Tribunal General de Justicia del Estado Libre Asociado de Puerto Rico, sala de San Juan. Cualquier término que no se haya definido en este contrato tendrá la definición designada en la Ley 208 del 17 de agosto de 1995, según enmendada.

AVISO AL COMPRADOR

1. Si los términos de financiamiento expuestos en este acuerdo con el VENDEDOR no fueren correctos en todos sus extremos; o
2. Si la propiedad descrita en este acuerdo no le hubiere sido entregada a usted por el VENDEDOR o no estuviese en la actualidad en su poder; o
3. Si el VENDEDOR no hubiere cumplido todas sus obligaciones para con usted, el COMPRADOR, usted deberá notificarlo al cesionario de este acuerdo por escrito, mediante correo certificado con acuse de recibo, a la dirección indicada en este acuerdo, dentro de los veinte (20) días siguientes a la fecha en que tenga conocimiento de algún hecho que pueda dar lugar a una causa de acción o defensa que surja de la venta y que pudiera usted tener en contra del VENDEDOR. Copia de cualquier notificación al Cesionario deberá ser referida a BBVA al: Departamento de Financiamiento de Automóviles, 1138 Calle Amarillo, Río Piedras, P.R. 00926

GARANTÍA SOLIDARIA

En consideración al otorgamiento de este Contrato por el VENDEDOR, el suscribiente por la presente garantiza solidariamente al VENDEDOR y su Cesionario, BANCO BILBAO VIZCAYA ARGENTARIA PUERTO RICO ("BBVA"), sus sucesores y cesionarios, el pago de todos los plazos bajo el Contrato, más intereses y el cumplimiento de todos los términos y condiciones del Contrato por parte del COMPRADOR. El suscribiente se obliga a pagar a BBVA, sus sucesores y cesionarios, cuando fuese requerido para ello, la totalidad del balance pendiente de pago bajo el contrato, si en cualquier momento el COMPRADOR dejase de cumplir con alguna de sus obligaciones o condiciones bajo este Contrato, sin obligación alguna de parte de BBVA, sus sucesores y cesionarios, de proceder primeramente contra el COMPRADOR. La responsabilidad del suscribiente no se afectará por cualquier divulgación, transacción, indulgencia, arreglo o variación de las obligaciones incurridas por o con el COMPRADOR o cualquier otra persona [illegible] o destrucción del vehículo o por el traspaso o cesión de este Contrato, disponiéndose, sin embargo, que el suscribiente no estará obligado más de lo que el COMPRADOR bajo los términos del mismo.

MAGALIA RIVERA PIMENTEL

Por la presente, se renuncia al derecho de aviso de aceptación de esta garantía, de todo aviso, demanda o notificación de incumplimiento, aviso de la cantidad adeudada, protesto, [illegible] y el derecho de trasladar cualquier acción judicial del Tribunal que primero adquiriese jurisdicción.

En ______________ Puerto Rico, a ______ de ______________ de ______

______________
Garantizador

______________
Testigo

______________
Dirección del Garantizador

______________
Dirección del Testigo

ACUERDO DE CESIÓN Y REVENTA DEL VENDEDOR

A: BANCO BILBAO VIZCAYA ARGENTARIA PUERTO RICO
Por el valor recibido, el que suscribe por la presente, CEDE, VENDE Y TRASPASA, a BANCO BILBAO VIZCAYA ARGENTARIA PUERTO RICO ("BBVA"), sus sucesores y cesionarios, todo su título, derecho e interés en este Contrato de Venta al Por Menor a Plazos—Gravamen Mobiliario (el "Contrato") y en los bienes que en él se describen. El que suscribe representa y garantiza que no ha ocurrido evento alguno que haya [illegible] y el cumplimiento de este Contrato en todas sus partes, de acuerdo con sus términos; y que los bienes a que este Contrato se refieren (los "Bienes") no son objeto de ninguna reclamación o defensa por parte del COMPRADOR y están libres de todo gravamen, excepto el gravamen constituido por el Contrato; que tales bienes fueron propiedad del suscribiente, hasta el momento en que se otorgó el Contrato, con derecho a venderlos y que el suscribiente tiene derecho absoluto para ceder, vender y traspasar el título al Cesionario y que los Bienes fueron entregados al COMPRADOR y aceptados por éste y se encuentran libres de defectos y en buen estado de uso; que la cantidad en efectivo mencionada en este Contrato como pronto pago del COMPRADOR ha sido recibida y pagada por el COMPRADOR y que ninguna parte de dicho dinero fue suplida por el VENDEDOR o su agente, y que el VENDEDOR no tiene obligación alguna del COMPRADOR o su agente que se relacione con esta compraventa, que las manifestaciones hechas en el Contrato son verdaderas y exactas en todas sus partes. Además, el suscribiente representa y garantiza a BBVA que: (i) el Contrato cedido evidencia una compraventa bona fide del vehículo y la persona (identidad) del COMPRADOR y que el mismo refleja correctamente [illegible]

[illegible]

[illegible] sus sucesores y cesionarios, todo la documentación necesaria para inscribir el Vehículo y el Contrato dentro del término dispuesto por la ley, libre de cargas y gravámenes, con excepción de aquellos constituidos por el Contrato. El conocimiento por el cesionario en cualquier momento sobre cualquier incumplimiento de lo anterior no constituirá renuncia a su defensa contra cualquiera de las obligaciones del suscribiente como cedente.

El VENDEDOR reconoce que en caso de que surja un conflicto, controversia, o contradicción entre lo convenido a este acuerdo de cesión y reventa y las disposiciones originales de dicho acuerdo contenidas en el Contrato de Venta al Por Menor a Plazos los mismos serán resueltos de conformidad con lo dispuesto por la enmienda arriba transcrita.

☐ A. Sin recurso al cedente.

☐ B. Con recurso al cedente. En consideración a la compra de este Contrato por BBVA, sus sucesores y cesionarios, el suscribiente se obliga incondicionalmente a garantizar solidariamente el pago puntual de todos los plazos especificados en el Contrato, más intereses, y se obliga a readquirir por compra, inmediatamente que fuese requerido para ello por BBVA, sus sucesores y cesionarios, este Contrato de Venta al Por Menor a Plazos, pagando el suscribiente la totalidad de la deuda pendiente de pago bajo el mismo, si en cualquier momento el COMPRADOR dejase de hacer efectivo a su vencimiento alguna de las condiciones y obligaciones bajo este Contrato, o si el mismo fuese rescindido por cualquier razón. La responsabilidad del suscribiente no será afectada por cualquier indulgencia, prórroga, transacción o variación en la obligación incurrida por o con el COMPRADOR o cualquier otra persona interesada y se renuncia expresamente al derecho de aviso de aceptación de esta garantía y a todo aviso, demanda o notificación de incumplimiento, protesto, requerimiento de pago, excusión y remedios sucesorios.

☐ C. Con recurso limitado al cedente. En consideración a la compra de este Contrato por BBVA, sus sucesores y cesionarios, el suscribiente se obliga incondicionalmente a garantizar solidariamente el pago puntual de todos los plazos especificados en el Contrato, más intereses, y se obliga a readquirir por compra, inmediatamente que fuese requerido para ello por BBVA, sus sucesores y cesionarios, este Contrato de Venta al Por Menor a Plazos, pagando el suscribiente la totalidad de la deuda pendiente de pago bajo el mismo, si en cualquier momento el COMPRADOR dejase de hacer efectivo a su vencimiento alguna de las condiciones u obligaciones bajo este Contrato, o si el mismo fuese rescindido por cualquier razón dentro de los primeros ________ meses (pagos) desde la inscripción de este Contrato. La responsabilidad del suscribiente no será afectada por cualquier indulgencia, prórroga, transacción o variación en la obligación incurrida por o con el COMPRADOR o cualquier otra persona interesada y se renuncia expresamente al derecho de aviso de aceptación de esta garantía y a todo aviso, demanda o notificación de incumplimiento, protesto, requerimiento de pago, excusión y remedios posesorios.

☐ D. Con recurso limitado al cedente. En consideración a la compra de este Contrato por BBVA, sus sucesores y cesionarios, el suscribiente se obliga incondicionalmente a satisfacer a BBVA, sus sucesores y cesionarios, a requerimiento de éste, la suma de $________________, si en cualquier momento el COMPRADOR dejase de hacer efectivo a su vencimiento algunos de los pagos o condiciones establecidas en este Contrato, o si el mismo fuese rescindido por cualquier razón. La responsabilidad del suscribiente no será afectada por cualquier indulgencia, prórroga, transacción o variación en la obligación incurrida por o con el COMPRADOR o cualquier otra persona interesada y se renuncia expresamente al derecho de aviso de aceptación de esta garantía y a todo aviso, demanda o notificación de incumplimiento, protesto, requerimiento de pago, excusión y remedios posesorios.

En ______________ Puerto Rico, a ______ de ______________ de ______

CRUZ auto
HUMACAO, PR 00791

Nombre del Vendedor ______________

Nombre del Vendedor ______________ Título ______________

Ley de Puerto Rico – Aviso al Cesionario

El cesionario que reciba o adquiera el presente Contrato al por menor a plazos o un pagaré relacionado con éste, quedará sujeto en igualdad de condiciones a cualquier reclamación o defensa que el Comprador pueda interponer en contra del Vendedor. El cesionario [illegible] tendrá el derecho a presentar contra el Vendedor todos los reclamos y defensas que el Comprador pueda levantar contra el Vendedor de los artículos o servicios.

LEY FEDERAL

La Comisión Federal de Comercio requiere que se incluya el siguiente aviso, el cual no debe interpretarse como una limitación a los derechos expuestos en el aviso anterior que requiere la ley estatal.

CUALQUIER TENEDOR DE ESTE CONTRATO DE CRÉDITO AL CONSUMIDOR ESTÁ SUJETO A TODAS LAS RECLAMACIONES Y DEFENSAS QUE EL DEUDOR PUDIERA ALEGAR EN CONTRA DEL VENDEDOR DE LOS BIENES Y SERVICIOS OBTENIDOS DE CONFORMIDAD CON EL MISMO O CON LOS RÉDITOS DE ESTE CONTRATO. EL RECOBRO POR EL DEUDOR BAJO ESTA CLÁUSULA NO EXCEDERÁ DE LAS CANTIDADES PAGADAS POR EL DEUDOR BAJO ESTE CONTRATO.

VEASE AL OTRO LADO PARA INFORMACION

Case 09-00990-SEK13 Claim 3 Filed 03/3... Desc Main Document Page 4 of 4

Exhibit 1

CERTIFICADO DE TITULO

01sep2006 09:25:53 0398-0222-4356-300000000

| NUMERO DE TITULO | FECHA EXPEDICION | NUMERO DE REGISTRO | FECHA REGISTRO |
|---|---|---|---|
| A 3863146 | 01sep2006 | 6800757 | 08mar2006 |

| NUMERO DE SERIE (VIN) | MARCA | MODELO | AÑO | |
|---|---|---|---|---|
| JA3AJ16E75U048135 | mitsubishi | lancer | 2005 | 04 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 00 | 00 | Nuevo | CertOrig | JP | 10 | blanco |

NOMBRE Y DIRECCION DEL DUEÑO REGISTRAL

Nombre: RIVERA PIMENTEL, MIGDALIA

Reside: URB LA MARINA
K-1 CALLE F
CAROLINA, PR 00979

Postal: URB LA MARINA
K1 CALLE F
CAROLINA, PR 00979

ESTE ES SU TITULO DE PROPIEDAD, CONSERVELO EN SITIO SEGURO.

GRAVAMENES

PRIMER GRAVAMEN (VENTA CONDICIONAL) — FECHA

BBVA — 08mar2006

SEGUNDO GRAVAMEN (OTROS)

CANCELACION GRAVAMEN

EL (LOS) ABAJO FIRMANTE (S) TENEDOR (ES) DEL GRAVAMEN SOBRE EL VEHICULO DE MOTOR DESCRITO ARRIBA, CERTIFICAMOS QUE EL MISMO HA SIDO PAGADO EN SU (S) FIRMA (S)

PRIMER GRAVAMEN ____________ FECHA ____________ FIRMA AUTORIZADA ____________

SEGUNDO GRAVAMEN ____________ FECHA ____________ FIRMA AUTORIZADA ____________

NUMERO DE CONTROL

A- 7207298

2006 Mitsubishi Lancer Trade-In Value, blue book value - Kelley Blue Book 

Exhibit. 2

Kelley Blue Book
THE TRUSTED RESOURCE
kbb.com

Send to Printer

## 2006 Mitsubishi Lancer ES Sedan 4D

BLUE BOOK® TRADE-IN VALUE

**Do you own this car?** It may qualify for a $3,500 or $4,500 credit (in lieu of trade-in cash) toward the purchase of a more fuel-efficient new car.

**Click here to find out**

| Condition | Value |
|---|---|
| Excellent | $5,750 |
| Good | $5,275 |
| ✓ Fair (Selected) | $4,525 |

### Vehicle Highlights

| | |
|---|---|
| **Mileage:** | 50,000 |
| **Engine:** | 4-Cyl. 2.0 Liter |
| **Transmission:** | 5 Speed Manual |
| **Drivetrain:** | FWD |

### Selected Equipment

**Standard**

| | | |
|---|---|---|
| Air Conditioning | Power Door Locks | Single Compact Disc |
| Power Steering | Tilt Wheel | Dual Front Air Bags |
| Power Windows | AM/FM Stereo | |

### Blue Book Trade-In Value

Trade-in Value is what consumers can expect to receive from a dealer for a trade-in vehicle assuming an accurate appraisal of condition. This value will likely be less than the Private Party Value because the reselling dealer incurs the cost of safety inspections, reconditioning and other costs of doing business.

**Vehicle Condition Ratings**

**Excellent** **$5,750**

- Looks new, is in excellent mechanical condition and needs no reconditioning.
- Never had any paint or body work and is free of rust.
- Clean title history and will pass a smog and safety inspection.
- Engine compartment is clean, with no fluid leaks and is free of any wear

Exhibit 2

or visible defects.
- Complete and verifiable service records.

Less than 5% of all used vehicles fall into this category.

**Good**

$5,275

- Free of any major defects.
- Clean title history, the paints, body, and interior have only minor (if any) blemishes, and there are no major mechanical problems.
- Little or no rust on this vehicle.
- Tires match and have substantial tread wear left.
- A "good" vehicle will need some reconditioning to be sold at retail.

Most consumer owned vehicles fall into this category.

✔ **Fair** (Selected)

$4,525

- Some mechanical or cosmetic defects and needs servicing but is still in reasonable running condition.
- Clean title history, the paint, body and/or interior need work performed by a professional.
- Tires may need to be replaced.
- There may be some repairable rust damage.

**Poor**

N/A

- Severe mechanical and/or cosmetic defects and is in poor running condition.
- May have problems that cannot be readily fixed such as a damaged frame or a rusted-through body.
- Branded title (salvage, flood, etc.) or unsubstantiated mileage.

Kelley Blue Book does not attempt to report a value on a "poor" vehicle because the value of these vehicles varies greatly. A vehicle in poor condition may require an independent appraisal to determine its value.

* Puerto Rico 7/3/2009

Prime Rate | Federal Funds Rates Discount Rate Fed Fund Reserve Lending COFI Page 1 of

Exhibit 3

Adv: BUYING GUIDES From Wells Farg

Quick links: Bank ratings | Graph rates | 100 High Yield CDs

Search Bankrate.com Search

Home Compare Rates Calculators News & Advice Life & Money Blogs

Mortgage Refinance Home Equity CDs & Investments Checking & Savings Auto Credit Cards Debt Management Insurance College Finance Retirement Taxes Find rates

advertisement

NOW EVERYONE PAYS $8.95 PER ONLINE EQUITY TRADE INVESTORS RULE READ IMPORTANT DISCLOSURE OPEN A SCHWAB ACCOUNT TALK TO CHUCK

MORTGAGE

## Prime rate, fed funds, COFI

By Bankrate.com

**The prime rate, as reported by the Wall Street Journal's bank survey, is among the most widely used benchmark in setting home equity lines of credit and credit card rates. It is in turn based on the fed funds rate, which is set by the Federal Reserve. The COFI (11th District cost of funds index) is a widely used benchmark for adjustable-rate mortgages.**

Click on the links below to find a fuller explanation of the term.

### Prime rate, fed funds, COFI

Updated 4/7/2010

| | This week | Month ago | Year ago |
|---|---|---|---|
| WSJ Prime Rate | 3.25 | 3.25 | 3.25 |
| Federal Discount Rate | 0.75 | 0.75 | 0.50 |
| Fed Funds Rate (Current target rate 0-0.25) | 0.25 | 0.25 | 0.25 |
| 11th District Cost of Funds | 1.614 | 1.786 | 2.003 |

### Ratings methodology

**What's included?** The fed funds rate is the primary tool that the Federal Open Market Committee uses to influence interest rates and the economy. Changes in the fed funds rate have far-reaching effects by influencing the borrowing cost of banks in the overnight lending market, and subsequently the returns offered on bank deposit products such as certificates of deposit, savings accounts, and money market accounts. Changes in the fed funds rate and the discount rate also dictate changes in the Wall Street Journal Prime Rate, which is of interest to borrowers. The prime rate is the underlying index for most credit cards, home equity loans and lines of credit, auto loans, and personal loans. Many small business loans are also indexed to the Prime rate. The 11th District Cost of Funds is often used as an index for adjustable-rate mortgages.

Back to Rate Watch main page

Share: Facebook Twitter Digg Delicious Buzz up! More

### Compare Mortgage Rates »

Click for the best Mortgage rates in your state

FIXED RATES

10 year fixed, 15 year fixed, 20 year fixed, 30 year fixed, 30 year FHA, 15 year fixed refi, 20 year fixed refi, 30 year fixed refi, 30 year FHA refi, See all fixed

ADJUSTABLE RATES (ARMS) AND INTEREST ONLY (IOS)

1 year ARM, 3/1 ARM, 5/1 ARM, 7/1 ARM, 10/1 ARM, 1 year ARM refi, 3/1 ARM refi, 5/1 ARM refi, 7/1 ARM refi, 10/1 ARM refi, 3/1 ARM (IO), 5/1 ARM (IO), 7/1 ARM (IO), 30 year fixed (IO), 3/1 ARM (IO) refi, 5/1 ARM (IO) refi, 7/1 ARM (IO) refi, 30 year fixed (IO) refi, See all ARMs, See all IOs

## Get up to Four Loan Offers in Minutes!

**Compare low rates from the nation's top lenders and local brokers**

- Fill out our simple, secure form
- Receive up to 4 loan offers
- Choose the program that best fits your needs

**Start Here**

Type of Loan: Refinance
Home Description: Single Family
Credit Profile: Excellent
Property Location: Select

Bankrate Select

**Sponsored Ads**

### Compare Mortgage Rates

30 yr fixed average **5.20%**

Zip code: Zip Code
Product: 30 yr fixed

About our rates

SCHWAB BANK HIGH YIELD INVESTOR CHECKING®
No ATM fees
Earn interest on any balance
Linked to a SchwabOne® brokerage account
OPEN A SCHWAB BANK CHECKING ACCOUNT
TALK TO CHUCK
READ IMPORTANT DISCLOSURE

advertisement

**Mortgage Overnight Averages** About this index

| Product | Rate | +/- | Last week |
|---|---|---|---|
| 30 yr fixed | 5.20% | | 5.23% |
| 15 yr fixed | 4.48% | | 4.56% |
| 5/1 ARM | 4.00% | | 4.05% |
| 30 yr fixed refi | 5.26% | | 5.31% |

**View rates in your area:** Zip Code

TALK TO CHUCK
charles SCHWAB

advertisement

TALK TO CHUCK charles SCHWAB

advertisement

**Mortgage Rate Alert**

Mortgage rates giving you motion sickness?

Let us watch for you. We'll tell you when they hit your target.

**Sign up now! It's simple. »**

**Subscribe:** RSS Feeds

http://www.bankrate.com/rates/interest-rates/prime-rate.aspx 4/12/2010